IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2019 Term

_____

No. 18-0764

_____

FILED

**November 19, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

MEAGAN S.,
Petitioner

v.

TERRY S. AND KIMBERLY S.,
Respondents

_____

Appeal from the Circuit Court of Cabell County
The Honorable Alfred E. Ferguson, Judge
Civil Action No. 18-D-42

REVERSED AND REMANDED WITH DIRECTIONS

_____

Submitted: October 30, 2019
Filed: November 19, 2019

Jennifer Ransbottom, Esq.                    Sarah E. Dixon, Esq.
Ransbottom Law Office                          Saad Dixon Law Offices PLLC
Huntington, West Virginia                      Huntington, West Virginia
Counsel for the Petitioner                     Counsel for the Respondents

JUSTICE ARMSTEAD delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl. Pt., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

2.      "The Due Process Clauses of Article III, Section 10 of the Constitution of West Virginia and of the Fourteenth Amendment of the Constitution of the United States protect the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Syl. Pt. 3, *Lindsie D.L. v. Richard W.S.*, 214 W.Va. 750, 591 S.E.2d 308 (2003).

3.      "There is a presumption that fit parents act in the best interests of their children." Syl. Pt. 4, *Lindsie D.L. v. Richard W.S*., 214 W.Va. 750, 591 S.E.2d 308 (2003).

ARMSTEAD, Justice:

This matter involves a grandparent visitation petition filed by Respondent paternal grandparents, Kimberly S. and Terry S. ("Grandparents").[1] The family court granted Grandparents' petition for visitation over the objection of Petitioner mother, Meagan S. ("Mother"). The circuit court affirmed the family court's order.

On appeal, Mother argues that 1) the grandparent visitation factors set forth in W. Va. Code § 48-10-502 (2001) weigh against visitation, and 2) the family court erred by failing to give special weight to her wishes concerning the care of her child. Upon review, we cannot properly assess these arguments because the family court failed to set forth sufficient findings of fact or conclusions of law explaining its ruling. Also, no evidentiary hearing was held in this matter. The only evidence presented during the proceedings below, and the only evidence in the record before us in this appeal, is a report from the guardian ad litem ("GAL"). We cannot conduct a meaningful review of the issues and factual disputes raised herein based solely on the GAL's report.

Therefore, we reverse the circuit court's August 7, 2018, order affirming the family court's order. This case is remanded to family court for further proceedings consistent with our ruling herein.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015).

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

R.S. was born in 2013. Mother[2] and R.S.'s father, C.S. ("Father"), were married when the child was born. They divorced in 2017. One month after the divorce, Father died. In January 2018, Grandparents filed a petition for visitation in the family court. The family court appointed a GAL who conducted interviews with R.S., Mother, Grandparents, and R.S.'s paternal aunt. Thereafter, the GAL submitted her report to the family court.

The GAL's report included the following information regarding her interviews with R.S. and Mother: 1) R.S. recalled visiting her Grandparents but said it had been a long time since she had been to their house; 2) Mother stated that the last contact R.S. had with Grandparents was in the summer of 2017;[3] 3) Mother reported that there had been tension between Father and his parents/Grandparents herein, and that Grandparents had limited contact with R.S. prior to Father's death; and 4) Mother had concerns about Grandparents' house.[4] The GAL's report included the following information regarding her interview with Grandparents: 1) they had only been alone with R.S. on one occasion; 2) they asserted that Mother was "controlling and would constantly glance into the room

---

[2] It is undisputed that Mother is a fit parent.

[3] Mother's interview with the GAL occurred on April 5, 2018.

[4] These concerns included 1) the cleanliness of the house, 2) a family member who was an alcoholic who had lived at the house, 3) medications left within R.S.'s reach on a prior visit, and 4) criminal activity in Grandparents' neighborhood.

2

where [R.S.] was even while all of the parties were in the same house"; 3) they disputed the concerns Mother raised about their house; and 4) R.S. had never stayed overnight at their house.

The GAL's report concluded that Mother and Grandparents did not agree on a number of basic facts about their relationship. The report provides "[m]any of the issues between the parties seem to be based on different recollections of events and impressions that may or may not have been intended." The report describes a number of "misunderstandings" that had occurred between the parties.

Per the GAL's report, Grandparents requested "something along the lines of a shared parenting agreement with them having [R.S.] every other weekend and throughout the week sometimes." Mother "indicated that it is her preference that [Grandparents] have no visitation or contact with R.S." The GAL recommended that Grandparents receive limited visitation.[5] The GAL noted that

> in the event that the Court does not award visitation to
> [Grandparents], it is highly likely that [R.S.] will be deprived
> of all contact with her father's side of the family where he is
> deceased and there is no indication that [Mother] has any
> intention of facilitating any contact between [R.S.] and her
> [Grandparents] or any of R.S.'s paternal family.

The family court entered an order granting Grandparents' petition for visitation. The order makes a number of findings "[b]ased upon *the testimony of the parties*

---

[5] The GAL recommended that R.S. visit with Grandparents four days a year.

3

and the report of the [GAL]." (Emphasis added). However, the family court did not hold an evidentiary hearing in this matter. It appears that neither party requested that an evidentiary hearing be held. Further, the parties did not offer any factual stipulations. Thus, it is unclear what "testimony of the parties" the family court considered.

The family court's order set forth the following rationale explaining why it granted the petition for visitation:

> The Court finds that the recommendation of the [GAL] to award some visitation to [Grandparents] is in the best interest of the minor child and adequately takes into consideration the factors set forth in WV Code § 48-10-502. The Court finds that the child, now four years old, has a relationship with her paternal grandparents and no way to maintain any contact or relationship with the grandparents and other family members of her deceased father, outside of the parameters of an award of visitation in this Court based upon the strained relationship that now exists between [Grandparents] and [Mother]. The Court finds that the award of several visitations between [Grandparents] and the child throughout the year appropriately balances the child's interest in having a continued relationship with her grandparents and [Mother's] interest in making decisions regarding the care and control of her daughter.

Mother appealed the family court's order to circuit court and requested oral argument. This request was denied based on the circuit court's conclusion that "[t]he record in this matter is sufficient to rule on the petition." We again note that the record in this matter only consists of the GAL's report.

The circuit court affirmed the family court's order. The circuit court's order includes the following analysis: "There is no evidence that the Family Court did not consider these two competing interests [best interest of the child and Mother's opinion],"

4

and "[t]here is no evidence that the Family Court did not accord at least some 'special weight' to [Mother's] opinion."

Following entry of the circuit court's order, Mother filed the instant appeal.

## II. STANDARD OF REVIEW

Our standard of review is as follows:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl. Pt., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

## III. ANALYSIS

On appeal, Mother argues that 1) the grandparent visitation factors set forth in W. Va. Code § 48-10-502 weigh against visitation, and 2) the family court erred by failing to give special weight to her wishes concerning the care of her child. Upon review, this Court cannot properly assess these arguments because the family court's order failed to set forth sufficient findings of fact or conclusions of law explaining its ruling. As discussed below, when a family court is presented with a petition for grandparent visitation, it must consider a number of factors and make specific, detailed findings explaining its ruling.

5

Grandparents filed their petition for visitation in the family court pursuant to W. Va. Code § 48-10-402 (2009).[6] The Legislature addressed the findings a court must make before granting a petition for grandparent visitation in W. Va. Code § 48-10-501 (2006): "The circuit court or family court shall grant reasonable visitation to a grandparent upon a finding that visitation would be in the best interests of the child and would not substantially interfere with the parent-child relationship."[7] We have held that "[t]he Due Process Clauses of Article III, Section 10 of the Constitution of West Virginia and of the

---

[6] W. Va. Code § 48-10-402 provides, in relevant part:

(a) The provisions of this section apply when no proceeding for divorce, custody, legal separation, annulment or establishment of paternity is pending.

(b) A grandparent may petition the family court for an order granting visitation with his or her grandchild, regardless of whether the parents of the child are married. If the grandparent filed a motion for visitation in a previous proceeding for divorce, custody, legal separation, annulment or establishment of paternity, and a decree or final order has issued in that earlier action, the grandparent may petition for visitation if the circumstances have materially changed since the entry of the earlier order or decree.

[7] W. Va. Code § 48-10-702(a) (2001) applies to this case. It provides:

(a) If a petition is filed pursuant to section 10-402 when the parent through whom the grandparent is related to the grandchild does not: (1) Have custody of the child; (2) share custody of the child; or (3) exercise visitation privileges with the child that would allow participation in the visitation by the grandparent if the parent so chose, the grandparent shall be granted visitation if a preponderance of the evidence shows that visitation is in the best interest of the child.

6

Fourteenth Amendment of the Constitution of the United States protect the fundamental right of parents to make decisions concerning the care, custody, and control of their children." Syl. Pt. 3, *Lindsie D.L. v. Richard W.S.*, 214 W.Va. 750, 591 S.E.2d 308 (2003).

The Legislature set forth thirteen factors that a circuit court or family court assessing a petition for grandparent visitation "shall consider":

> In making a determination on a motion or petition the court shall consider the following factors:
>
> (1) The age of the child;
> (2) The relationship between the child and the grandparent;
> (3) The relationship between each of the child's parents or the person with whom the child is residing and the grandparent;
> (4) The time which has elapsed since the child last had contact with the grandparent;
> (5) The effect that such visitation will have on the relationship between the child and the child's parents or the person with whom the child is residing;
> (6) If the parents are divorced or separated, the custody and visitation arrangement which exists between the parents with regard to the child;
> (7) The time available to the child and his or her parents, giving consideration to such matters as each parent's employment schedule, the child's schedule for home, school and community activities, and the child's and parents' holiday and vacation schedule;
> (8) The good faith of the grandparent in filing the motion or petition;
> (9) Any history of physical, emotional or sexual abuse or neglect being performed, procured, assisted or condoned by the grandparent;
> (10) Whether the child has, in the past, resided with the grandparent for a significant period or periods of time, with or without the child's parent or parents;
> (11) Whether the grandparent has, in the past, been a significant caretaker for the child, regardless of whether the child resided inside or outside of the grandparent's residence;

7

(12) The preference of the parents with regard to the requested visitation; and

(13) Any other factor relevant to the best interests of the child.

W. Va. Code § 48-10-502.[8]

In the present case, the family court's order did not include any specific analysis addressing the thirteen factors set forth in W. Va. Code § 48-10-502. Instead, it merely provided "[t]he Court finds that the recommendation of the [GAL] to award some visitation to [Grandparents] is in the best interest of the minor child and adequately takes into consideration the factors set forth in WV Code § 48-10-502." The family court did not state which factors weighed in favor of or against grandparent visitation.

This Court has determined that a family court's failure to make specific findings of fact regarding the grandparent visitation factors in W. Va. Code § 48-10-502 was clear error. In *Turley v. Keesee*, 218 W.Va. 231, 624 S.E.2d 578 (2005), the Court explained that "the Legislature has gone to great lengths to enumerate the factors listed in W. Va. Code § 48-10-502. These factors should be clearly addressed in any family court order granting grandparent visitation rights." 218 W. Va. at 234, 624 S.E.2d at 581. Additionally, the Court provided

> [w]e find that the family court's Order . . . does not satisfy the requirements of W. Va. Code § 48-10-502. Merely restating the thirteen factors and tacking on to them the court's "feeling" that each factor has been satisfied is not enough. **The family**

---

[8] This Court has held that "[t]he best interests of the child are expressly incorporated into the Grandparent Visitation Act in W. Va. Code §§ 48-10-101, 48-10-501, and 48-10-502 [2001]." Syl. Pt. 2, *In re Hunter H.*, 231 W.Va. 118, 744 S.E.2d 228 (2013).

> **court must thoroughly evaluate how each factor applies to the specific facts and allegations contained in the case before it. The same evaluation must be made as to the best interests of the children.**

*Id*. (Emphasis added).

This Court's ruling in *Turley* is consistent with our general rule that a lower court's order "must be sufficient to indicate the factual and legal basis for the [court]'s ultimate conclusion so as to facilitate a meaningful review of the issues presented." *Province v. Province*, 196 W.Va. 473, 483, 473 S.E.2d 894, 904 (1996); *see also Nestor v. Bruce Hardwood Flooring, L.P*., 206 W.Va. 453, 456, 525 S.E.2d 334, 337 (1999) ("[O]ur task as an appellate court is to determine whether the circuit court's reasons for its order are supported by the record."). "Where the lower tribunals fail to meet this standard—i.e. making only general, conclusory or inexact findings—we must vacate the judgment and remand the case for further findings and development." *Province*, 196 W.Va. at 483, 473 S.E.2d at 904. This Court has stated, "[w]ithout factual or legal findings, this Court is greatly at sea without a chart or compass in making a determination as to whether the [lower] court's decision was right or wrong." *In re Timber M*., 231 W.Va. 44, 59, 743 S.E.2d 352, 367 (2013) (internal citation omitted).

In addition to failing to specifically address the thirteen factors listed in W. Va. Code § 48-10-502, the family court's order only included a brief mention of Mother's "interest in making decisions regarding the care and control of her daughter." The order does not explain why Mother's interest in making decisions regarding the care of R.S. is outweighed by R.S.'s interest in having a continuing relationship with Grandparents.

9

Mother is a fit parent. We have held "[t]here is a presumption that fit parents act in the best interests of their children." Syl. Pt. 4, *Lindsie D.L.*, 214 W.Va. 750, 591 S.E.2d 308. Additionally, this Court has provided guidance on the special weight that must be afforded to a fit parent's decisions regarding the care of their child:

> **In reconciling the valid competing interests ensconced within a grandparent visitation determination**, **significant weight must be accorded to a fit parent's wishes**. This principle is . . . premised upon the recognition that a fit parent having custody of a child possesses distinct rights regarding the selection of individuals with whom that child may be affiliated. This principle was the determining factor in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), in which the United States Supreme Court held that a Washington state statute violated the substantive due process rights of a parent by allowing visitation rights, over parental objection, even where such visitation served the best interests of the child. *Id.* at 61, 120 S.Ct. 2054. The Supreme Court held that the Washington statute unconstitutionally infringed upon a parent's rights by failing to accord appropriate deference to "a parent's decision that visitation would not be in the child's best interest." *Id.* at 67, 120 S.Ct. 2054. . . .
>
> In discussing the rationale of *Troxel*, this Court has observed that the Supreme Court "instructs that a judicial determination regarding whether grandparent visitation rights are appropriate may not be premised solely on the best interests of the child analysis." *Cathy L.M. v. Mark Brent R.*, 217 W.Va. 319, 327-28, 617 S.E.2d 866, 874-75 (2005). Rather, the evaluating court "must also consider and give significant weight to the parents' preference, thus precluding a court from intervening in a fit parent's decision making on a best interests basis." *Id.*
>
> In *State ex rel. Brandon L. v. Moats*, 209 W.Va. 752, 551 S.E.2d 674 (2001), this Court indicated that it was not identifying "the amount of weight that should attach to the factor of parental preference. . . ." *Id.* at 763, 551 S.E.2d at 685. The *Brandon* Court noted, however, that "in light of the *Troxel*

10

> decision it is clear that 'the court must accord at least some special weight to the parent's own determination' provided that the parent has not been shown to be unfit." *Id.* (*quoting Troxel*, 530 U.S. at 70, 120 S. Ct. 2054).

*In re Grandparent Visitation of A.P.*, 231 W. Va. 38, 41-42, 743 S.E.2d 346, 349-350 (2013) (emphasis added).

In the present case, the family court's order provides that if it declined to award grandparent visitation, R.S. would not have any contact with Grandparents. However, the order does not offer any substantive reason why this concern outweighs Mother's interest in making decisions regarding the care of her daughter. "The mandates of *Troxel* require that the wishes of the petitioner, as a fit parent presumed capable of rational choices concerning the relationships to be enjoyed by her child, be accorded special weight." *Id.*, 231 W. Va. at 43, 743 S.E.2d at 351.[9] Because the family court did not explain why R.S.'s interest in having a continuing relationship with Grandparents outweighed the special weight that is afforded to Mother's preference, we cannot conduct a meaningful review of this issue.

Finally, we note that no evidentiary hearing was held in this matter. We find it concerning that both the family court and circuit court issued orders in this matter in which the only evidence presented was the GAL's report. There was no testimony or

---

[9] Given the lack of specific findings made by the family court, we cannot discern how the circuit court determined that "[t]here is no evidence that the Family Court did not accord at least some 'special weight' to [Mother's] opinion."

11

factual stipulations from the parties. This is especially concerning given the numerous factual disputes that exist. As highlighted in the GAL's report, Mother and Grandparents did not agree on a number of basic facts about their relationship or about whether Grandparents' house was a proper environment for R.S. Additionally, during oral argument before this Court, the parties contested various factual allegations including an alleged verbal altercation that occurred between the parties outside of a courtroom, and a child therapist that allegedly recommended R.S. have no contact with Grandparents.[10] This Court has no meaningful way to assess these factual disputes because no evidentiary hearing was held. Nor can we assess a therapist's opinion when the therapist has not been identified, did not testify below, and did not submit a report or affidavit setting forth his/her opinion.

Based on all of the foregoing, we find that the circuit court erred in affirming the family court's order. We remand this matter to the family court with directions for it to hold further proceedings which will allow it to conduct a meaningful review of the petition for grandparent visitation and, thereafter, to enter an order that includes a specific, detailed analysis of the thirteen factors listed in W. Va. Code § 48-10-502. The family court must also address the special weight that is to be afforded to Mother's decisions

---

[10] Mother's brief to this Court provides, with no citation to the record: "Just meeting with the [GAL] caused the child to have anxiety about the grandparents. In a follow up meeting with the child's therapist, it was recommended that she have no contact with the grandparents."

concerning the relationships to be enjoyed by R.S. *See In re Grandparent Visitation of A.P.*, 231 W. Va. 38, 743 S.E.2d 346.

## IV. CONCLUSION

We reverse the circuit court's August 7, 2018, order. This case is remanded to the family court for further proceedings. At the conclusion of the additional proceedings, the family court's order must include specific findings of fact and conclusions of law upon which it bases its decision.

Reversed and Remanded With Directions.